UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| UNITED STATES | CR ACTION NO. 08-259 |
| VERSUS | U.S. DISTRICT JUDGE DEE D. DRELL |
| WILLIAMS | U.S. MAGISTRATE JUDGE JAMES D. KIRK |

REPORT AND RECOMMENDATION

This is a motion to suppress a statement made by the defendant. The district judge referred the matter to me for hearing which was held on July 16, 2009.

The defendant moves to suppress (**doc. # 20**) a statement made by the defendant to FBI agent Jeff Goins on February 6, 2008 on the grounds that defendant did not voluntarily waive his Miranda rights. The government argues that, while there was no signed waiver of rights form, defendant did in fact waive his rights and voluntarily gave a statement to the agent. Alternatively, the government suggests that the statement can be used for impeachment purposes regardless whether defendant waived his rights.

On November 15, 2007, defendant, an inmate at the federal prison in Pollock Louisiana is alleged to have stabbed William Bullock, another inmate. Bullock died of his wound the same day. The stabbing was captured on video surveillance and the authorities at Pollock quickly identified Williams as the perpetrator. Williams was immediately taken to the Secure Housing Unit (the SHU) as were two other inmates who were involved in the attack. That same night,

FBI Special Agent Goins traveled to the prison to interview Williams in the SHU. Williams advised Goins that he did not wish to speak with him at that time. Nevertheless Goins showed Williams a print of one or more "frames" of the video surveillance and told Williams that he planned to recommend to the US Attorney that Williams be prosecuted for murder. Goins also suggested that if Williams changed his mind and wished to speak with Goins, to get word to him through the staff at Pollock.

Goins testified that, thereafter, SIA agent Townsend contacted him and told him that Williams wished to speak with him. Townsend confirms that Williams approached him in the SHU and asked him to notify Goins. Within a week or two Goins arrived at Pollock to talk to the defendant. Williams gave a statement to Goins and Townsend was in the room. However, the rights form was not signed by defendant. It is this fact that gives rise to the instant dispute and motion.

In August, Goins, at the request of the prosecutor returned to Pollock and asked  to obtain a recorded statement from Williams but Williams this time refused stating, "nope, I'm good".

The government has the burden of proving by a preponderance of the evidence that each defendant voluntarily waived his rights and that the statements he made were voluntary.  Voluntariness depends on the totality of the circumstances and must be evaluated on a case by case basis under <u>Colorado v. Connelly</u>, 479 U.S. , 107 S.Ct.

515, 520-21, 93 L.Ed. 2d 473 (1986). A confession is voluntary in the absence of official overreaching, in the form of either direct coercion or subtle forms of psychological persuasion. <u>U.S. v. Rojas-Martinez</u>, 968 F.2d 415, 418 (5th Cir. 1992), cert.den., __ U.S.____, 113 S.Ct. 995, 122 L.Ed.2d 146 (1993). Also, <u>U.S. v. Raymer</u>, 876 F.2d 383, 386-87 (5th Cir.), cert.den., 493 U.S. 870, 110 S.Ct. 198, 107 L.Ed.2d 152 (1989); <u>Bell v. Lynaugh</u>, 663 F.Supp. 404, 413 (E.D.Tex.), aff'd, 828 F.2d 1085 (5th Cir.), cert. den., 484 U.S. 933, 108 S.Ct. 310, 98 L.Ed.2d 268 (1987). In order for a defendant to establish that his confession was involuntary, he must demonstrate that it resulted from coercive police conduct and that there was a link between the coercive conduct of the police and his confession. <u>U.S. v. Bell</u>, 367 F.3d 452, 461 (5th Cir. 2004).

Coercive police activity is a necessary predicate to the finding that a confession is not "voluntary" within the meaning of the Due Process Clause of the Fourteenth Amendment. <u>Penry v. Lynaugh</u>, 832 F.2d 915, 918 (5th Cir. 1987), rev'd in part on other grounds, 492 U.S. 302, 109 S.Ct. 2934 (1989), citing <u>Connelly</u>, 107 S.Ct. at 522. <u>Miranda</u> protects defendants against government coercion leading them to surrender rights protected by the Fifth Amendment; it goes no further than that. <u>Connelly</u>, 107 S.Ct. at 524.

Whenever the government bears the burden of proof in a motion

to suppress a statement that the defendant claims was obtained in violation of the Miranda doctrine, the government need prove waiver only by a preponderance of the evidence.  The sole concern of the Fifth Amendment, on which Miranda was based, is governmental coercion.  The voluntariness of a waiver of this privilege has always depended on the absence of police overreaching, not on "free choice" in any broader sense of the word.  Colorado v. Connelly, 479 U.S. 157, 107 S.Ct. 515 (1986).

There is a presumption against waiver.  North Carolina v. Butler, 441 U.S. 369, 373, 99 S.Ct. 1755, 1757 (1966).  The prosecution bears the burden of proving by a preponderance of the evidence that a defendant knowingly and intelligently waived his Miranda rights.  Colorado v. Connelly, supra.  To satisfy this burden, the prosecution must introduce sufficient evidence to establish that under the "totality of the circumstances," the defendants was aware of the nature of the right being abandoned and the consequences of the decision to abandon it.  Moran v. Burbine, 475 U.S. 412, 421, 106 S.Ct. 1136, 1141 (1986).

In U.S. v. Dobbins, 165 F.3d 29 (6th Cir. 1998), the Sixth Circuit found a confession was knowing and voluntary where, although the FBI failed to record the confession, there was a written waiver rights signed by the defendant.  In the Fourth Circuit, the preferred practice is to follow an oral Miranda warning by an executed written waiver.  U.S. v. Sledge, 546 F.2d

1120, 1122 (4th Cir. 1977).

Miranda warning given mid-interrogation after defendant gives an un-warned confession are ineffective. A confession repeated after the warnings are given is inadmissible at trial where withholding the Miranda rights until after a confession is obtained is part of a deliberate strategy to solicit incriminating testimony without informing the defendant of Miranda rights, and then persuading defendant to repeat the same testimony after Miranda warnings are given. <u>Missouri v. Seibert</u>, 542 U.S. 600, 125 S.Ct. 2601 (2004).

In this case, defendant testified that he did not ask SIA Agent Townsend to notify Special Agent Goins that he wished to talk with him. He also denied that he waived his Miranda rights. On the other hand, both SIA agent Townsend and Special Agent Goins testified that they witnessed Williams verbally waive his rights and give the statement. Both stated that it would have been impossible for Williams to sign the form because both of his hands were handcuffed behind his back. Townsend testified that he would not have violated prison policy by un-cuffing him in order to re-cuff his hands in front of him in order for him to sign.

In addition to the agent's testimony, the nature of the statement supports that it was freely given. The statement sought to absolve the other two inmates of any responsibility in the attack and thus was, in that respect, self serving to the

defendant. Finally, it is noted that defendant is not a novice to the legal system and was well aware of his right not to give a statement.

At the hearing, the court raised the issue of whether the defendant should have been brought before a magistrate judge soon after he was placed in the SHU since, at that early time, it was clear to the investigators that he had committed the murder. In fact, Williams was not brought for initial appearance until October 24, 2008, after he was indicted some eight months after he was placed in the SHU for his involvement in the crime.

SIA Agent Townsend testified, however, that the prison's normal practice is to place anyone involved in a violent altercation in the SHU during the investigation. Williams is, to this day, still in the SHU. Agent Goins testified that the US Attorney likes to complete his case and be ready for trial before a defendant is charged, due to speedy trial concerns.[1]

Confinement in the SHU does not constitute an arrest that triggers Sixth Amendment protections and is not the equivalent of an arrest or accusation for Sixth Amendment purposes - U.S. v. Beason, 128 F.3d 974 (4th Cir. 2005)(speedy trial issue; Def. indicted on one count of possession of marijuana by a federal prisoner); U.S. v. Jackson, 19 F.3d 30 (9th Cir. 1994) (placement

---

[1] During the time that the government is preparing its case, the defendant has not been provided a lawyer and has no means of preparing his case. He is, however, entitled to waive the speedy trial delays so that he can later accomplish his trial preparation.

in administrative segregation does not constitute an arrest for speedy trial purposes); <u>U.S. v. Brooks</u>, 670 F.2d 148 (11th Cir. 1982), cert. den., 457 U.S. 1124, 102 S.Ct. 2943 (1982)(confinement of a prisoner in administrative segregation neither constitutes an arrest nor makes a prisoner an accused for speedy trial purposes), citing <u>U.S. v. Blevins</u>, 593 F.2d 646 (5th Cir. 1979) (confinement in administrative segregation is not an "arrest" or an "accusal" for sixth amendment purposes).

Whether pre-indictment delay violates the Due Process Clause of the Fifth Amendment depends on whether (1) the defendant can show that he suffered any actual, substantial prejudice, and if so, (2) do the reasons for the delay justify the prejudice to the defendant  <u>U.S. v. Blevins</u>, 593 F.2d 646 (5th Cir. 1979); <u>U.S. v. Lovasco</u>, 431 U.S. 783, 97 S.Ct. 2044 (1977).

The statutes of limitations provide predictable, legislatively enacted limits on prosecutorial delay and are the primary guarantee against bringing overly stale criminal charges.  The Due Process Clause has a limited role in protecting against oppressive delay. Prosecutors are under no duty to file charges as soon as probable cause exists but before they are satisfied they will be able to establish the suspect's guilt beyond a reasonable doubt.  The Due Process Clause does not compel prosecutors to initiate prosecutions as soon as they establish probable cause, or to prosecute once the evidence of guilt is clear.  Prosecution of a defendant following

investigative delay does not deprive the defendant of due process. U.S. v. Lovasco, 431 U.S. 783, 97 S.Ct. 2044 (1977).

It is clear, therefore, that defendants' placement in the SHU did not constitute an arrest and thus did not trigger a duty to bring defendant before a Magistrate Judge. Nor is there evidence before the court that Williams has suffered any prejudice by any delay in his indictment.

For the foregoing reasons, I find that defendant's statement was made voluntarily after he was advised of his Miranda rights. I find also that, in any event, the statement can always be used to impeach the defendant should he testify differently at trial. Harris v. New York, 401 U.S. 222 (1971). Otherwise a defendant would be able to testify falsely while hiding behind his Miranda rights. Nix v. Whiteside, 106 S. Ct. 988 (1986).

For the foregoing reasons, IT IS RECOMMENDED THAT the Motion to Suppress be DENIED.

## OBJECTIONS

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), the parties have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the district

8

judge at the time of filing.  Timely objections will be considered by the district judge before he makes his final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT UPON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UN-OBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED in chambers, in Alexandria, Louisiana, on this the 3rd day of August, 2009.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE